**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOHN S. SOUTHERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-590-JHP |
| | ) | |
| ALL POINTS DELIVERY SYSTEMS, INC., | ) | |
| an Oklahoma corporation; KEITH AUSTIN, | ) | |
| an individual; TULSA CELEBRATIONS, LLP, | ) | |
| an Oklahoma limited liability partnership; | ) | |
| JEFFREY ALAN LEICHNITZ, an individual | ) | |
| also know as JEFF LEICHNITZ; VERONICA | ) | |
| M. LEICHNITZ, an individual also known as | ) | |
| VERONICA LEICHNITZ; RUSSELL | ) | |
| CHRONISTER, an individual; and WEBRING, | ) | |
| INC., an Oregon corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION**

Before the Court is Defendant WebRing, Inc.'s Motion to Dismiss for lack of personal jurisdiction and improper venue, Plaintiff John S. Southern's Response in opposition, and WebRing's Reply thereto. A hearing on the briefs was held February 23, 2006. Upon consideration of the briefs and the oral arguments on this matter, and for reasons stated herein, WebRing's Motion is DENIED in its entirety.

**Background**

Plaintiff John S. Southern is a professional photographer residing in Tulsa, Oklahoma. WebRing is an Oregon corporation operating an Internet-based information locator service. Southern alleges infringement of certain of his copyrighted photographs and claims damages under 17 U.S.C. §§ 504 and 505. As relates to this Motion, Plaintiff specifically alleges that

1

Defendant Russell Chronister unlawfully posted Southern's photograph titled "City Lights" on his website titled "Oklahoma Skyscrapers" and that Defendant WebRing induced and materially contributed to the unlawful display and distribution of said image to a broader audience by including Chronister's website as a WebRing member site.[1]  Plaintiff further alleges that WebRing profits from the content of member sites such as "Oklahoma Skyscrapers" and that its unlawful use of Plaintiff's intellectual property has deprived Plaintiff of any license fees and devalued Plaintiff's exclusive right to exploit his work and profit therefrom.  For its part, WebRing, as an Oregon corporation with its principal place of business in Oregon, claims that personal jurisdiction and venue are improper in this Court.  These are the issues currently before the Court.

## Discussion

The purpose of allowing a jurisdictional challenge such as the one raised here is to protect a defendant who has no meaningful contact with a state from being forced to litigate in an unfamiliar and potentially unfair forum.  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998).  If the Court determines that an evidentiary hearing is not

---

[1] Plaintiff also charges Chronister and Webring with infringement of a second copyrighted photograph of the city of Bartlesville, including the Price Tower, at night, and charges WebRing alone with the unlawful display and distribution of a third copyrighted work, "Oklahoma City," which is part of the "GH Photography" website.  In his Response to the instant Motion, Southern states that he has sued Chronister for infringement of two (2) copyrighted photographs.  Southern does not, however, comment in his Response upon the third image, "Oklahoma City," although his Amended Complaint includes reference thereto.  In the Amended Complaint, Southern charges WebRing with infringement of "Oklahoma City," but does not include information about the "GH Photography" website's owner, as he did with the other two photographs.  For purposes of this Order, which deals exclusively with jurisdictional matters, the Court will refer generally to Southern's "copyrighted works."  However, because each alleged infringement forms a separate claim, the Court requests more precision from the parties in future pleadings.

necessary, the plaintiff must only make a *prima facie* showing that jurisdiction is appropriate in order to overcome such challenge. Id. at 1091. The defendant must then present a compelling case that the exercise of jurisdiction would somehow be unreasonable. Id. At this early stage of litigation, the plaintiff's burden is light, and all doubts must be resolved in plaintiff's favor. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).

To establish personal jurisdiction over the defendant, the plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. Id. Because Oklahoma's long-arm statute permits any exercise of jurisdiction consistent with the U.S. Constitution, the personal jurisdiction inquiry conflates into a single due process inquiry. Id. Due process requires "only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant's "minimum contacts" with the forum may be sufficient to support general or specific jurisdiction. In order to be subject to general jurisdiction, the defendant must have "continuous and systematic contacts" with the forum. Heliocopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984). In order to be subject to specific jurisdiction, the defendant must purposefully direct its activities toward the forum, thereby giving rise to plaintiff's cause of action, so that the defendant may "reasonably anticipate being haled into court there," World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Here, Plaintiff alleges that jurisdiction and venue in this Court are proper because

WebRing does business, and has continuous and systematic contact by means including advertising, recruiting members, and distributing material in the state of Oklahoma. Plaintiff also states that WebRing acts through and is comprised of its ringmasters and member sites, including ringmasters and member sites located in Oklahoma. Most, if not all, of WebRing's activity in the state is conducted via the Internet. Therefore, the issue before the Court is whether the "nature and quality" of WebRing's Internet activity within Oklahoma is sufficient to justify the Court's exercise of personal jurisdiction over this Defendant. *See* Lively v. IJAM, Inc., 114 P.3d 487, 497 (Okla. Civ. App. 2005).

### I. WebRing's Contacts with Oklahoma

When examining a defendant's "minimum contacts," the Court must determine whether such contacts would support the exercise of general or specific jurisdiction, if at all. General jurisdiction permits the Court to exercise jurisdiction over the defendant without regard to the subject matter of the suit. Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1295 (10th Cir. 1999). As stated above, a defendant must have "continuous and systematic contacts" with the forum in order to be subject to general jurisdiction. *See* Heliocopteros, 466 U.S. at 415-16. The Tenth Circuit has further mandated that the defendant must be conducting substantial and continuous local activity with the forum. Soma Med. Int'l, 196 F.3d at 1295. In making this determination, the Court may consider whether the defendant (1) engages in business in this state; (2) is licensed to do business in this state; (3) owns, leases, or controls any real or personal property or assets in this state; (4) has employees, offices, agents, or bank accounts in this state; (5) has shareholders resident in this state; (6) maintains telephone or fax listings within this state; (7) advertises or solicits business in this state; (8) travels to this state by way of salespersons,

etc.; (9) pays taxes in this state; (10) visits potential customers in this state; (11) recruits employees in this state; or (12) generates a substantial percentage of its national sales through revenue generated from customers in this state.  Id. at 1295-96; Smith v. Basin Park Hotel, Inc., 178 F. Supp. 2d 1225, 1231 (N.D. Okla. 2001).  Further, to rely solely upon Internet presence to establish general jurisdiction requires the defendant to "actually and deliberately use[] its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum."  Smith, 178 F. Supp. 2d at 1235.

Here, it is undisputed that WebRing is not licensed to do business in Oklahoma, does not own any property or have any "corporeal" business assets in Oklahoma, and does not pay taxes in Oklahoma.  Instead, all of WebRing's business dealings in the forum are conducted via the Internet.  WebRing's business in the state consists of advertising and soliciting members here, including "supporting" members who pay WebRing monthly fees for enhanced services. WebRing communicates directly with its members via e-mail when setting up their accounts. WebRing also has "ringmasters" resident in the state, who control the membership and content of various "rings" and otherwise act as agents of WebRing.[2]  There are "rings" devoted to topics of particular interest to Oklahoma citizens, including 38 rings with "Oklahoma" in the title, which are comprised of more than 350 member sites.  Most, if not all, of these individual member sites carry a link to WebRing's homepage, which theoretically allows WebRing to solicit additional business from each and every visitor to its member sites.

WebRing's business activities are "continuous," insofar as information about WebRing is

---

[2] Ringmasters are WebRing members who volunteer to manage "rings" based on their interests and expertise, irrespective of their geographic location.  Thus, WebRing members in Oklahoma do not necessarily have Oklahoma-based ringmasters, and vice versa.

available to anyone with Internet access, anywhere in the world, at any time. Admittedly, the nature of WebRing's business does not appear to include "purposeful availment" of any particular geographic market other than the "Internet community."[3] Arguably, it could be said that WebRing, because it operates solely via the Internet, does not actively recruit members, so much as potential members look for and avail themselves of WebRing. Based in part on this interpretation of its business operations as more "passive" than not, WebRing argues that it would be "ridiculous" for its Internet contacts to count toward personal jurisdiction, because it would then be subject to jurisdiction "everywhere." Equally ridiculous, however, is the converse argument that, if its Internet contacts do **not** count, then WebRing is not subject to jurisdiction **anywhere**.

Indeed, case law suggests a bright line between "doing business on the Internet" and merely "operating a website." *See, e.g.*, Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) (finding that Dot Com, which "sold passwords to approximately 3000 subscribers in Pennsylvania and entered into seven contracts with Internet access providers to furnish its services to their customers in Pennsylvania" did more than just operate a website). The nature and quality of such operations are judged according to a "sliding scale."

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is

---

[3] *See* Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 914 (D. Or. 1999) ("Unlike newspaper, mailing, radio, television and other media containing advertisements and solicitations, most Internet advertisements and solicitations are not directed at a specific geographic areas or markets [*sic*]; to the contrary, **advertising on the Internet targets no one in particular and everyone in particular in any given geographic location**.") (emphasis added).

6

> accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. at 1124. According to this scale, WebRing is clearly more than just a passive website. WebRing provides a service to its members, the exact quality of which depends on whether the account holder has a free membership or a paid membership. By linking to these members, WebRing can increase traffic to its own site and thus, expand its membership base. WebRing also provides a forum for third-party advertisers. All of these activities generate revenue and contribute, directly or indirectly, to WebRing's commercial success.

Still, the Court must impose a stringent minimum contacts test to justify the exercise of general jurisdiction. See OMI Holdings, Inc., 149 F.3d at 1090-91 (citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)). Here, although WebRing's **potential** for pervasive and substantial commercial activity in the state of Oklahoma is unlimited, its **actual** operations are not provably so. Thus, the exercise of general jurisdiction over WebRing would likely be too broad to comport with "traditional notions of fair play and substantial justice."

The Court does find, however, that WebRing has sufficient contacts with Oklahoma to support specific jurisdiction. Specific jurisdiction can be maintained where the defendant purposefully directs activities at the forum state and those purposefully directed activities give rise to the litigation before the court. See id. at 1090. Here, WebRing entered into a membership agreement with Defendant Chronister, an Oklahoma resident, and accepted his website,

"Oklahoma Skyscrapers," as a WebRing member site. This act, in addition to WebRing's operations detailed above, obviously constitutes "purposeful availment."[4]

Yet, WebRing asserts that, even if it has purposefully directed its activities toward Oklahoma, Plaintiff's injury arises not from WebRing's acts, but from Chronister's. Litigation arises out of the defendant's purposeful activities toward the forum state when there is a nexus "between Defendant's forum-related contacts and the Plaintiff's cause of action." Id. at 1095. Here, Plaintiff's injury stems from the unauthorized display of his copyrighted photograph on a WebRing member website. The Court therefore finds that the relationship between WebRing and Chronister and this Plaintiff's cause of action was such that WebRing could reasonably expect to be haled into court in Oklahoma.[5] Simply put, WebRing's promise to increase traffic to its members' websites resulted, in this case, in a wider distribution of illegal material. Thus, a direct corollary exists between WebRing's purposeful activities in the state and Plaintiff's cause

---

[4] Of course, even a single contact may be sufficient to create a connection with the forum. *See, e.g.*, McGee v. Int'l Life Ins. Co., 335 U.S. 220, 223 (1957). However, because "the common thread in cases involving jurisdiction via an Internet website . . . is that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet," the Court considers the totality of the circumstances here. *See* Soma Med. Int'l, 196 F.3d at 1296 (internal quotations and citation omitted).

[5] To a certain extent, the Court finds more generally that, if WebRing could anticipate being sued by a "member" in Oklahoma, WebRing should also be able to foresee being sued by a third party who has a quarrel with that member's Internet activity, such as Plaintiff's quarrel with Defendant Chronister here. Indeed, this would seem to the Court to be the reasoning behind WebRing's requirement that members submit to certain "terms of service," subject to having their services unilaterally terminated by WebRing should they violate those terms. Of course, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," but neither is it wholly irrelevant World-Wide Volkswagon, 444 U.S. at 295, 297. Here, WebRing's connection with Chronister in Oklahoma raised the "foreseeability" critical to the due process analysis, namely, the very real possibility of litigation.

of action.

## II.  Traditional Notions of Fair Play and Substantial Justice

Even though the Court finds there are sufficient minimum contacts between WebRing and the State of Oklahoma, the Due Process Clause requires the Court to ensure that the exercise of personal jurisdiction over WebRing would not "offend traditional notions of fair play and substantial justice."  Id. at 1091.  This inquiry requires the defendant to prove that litigation in the chosen forum would be "'so gravely difficult and inconvenient' that [the] party unfairly is at a 'severe disadvantage' in comparison to his opponent."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)).  To determine whether the exercise of jurisdiction would be so unreasonable, the Court must consider (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  OMI Holdings, Inc., 149 F.3d at 1095 (quoting Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 113 (1987)).

### A.  Burden on the Defendant

"Certainly, 'in this age of instant communication,' and modern transportation, the burdens of litigating in a distant forum have lessened."  Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (quoting Republic of Pan. v. BCCI Holdings (LUXEMBOURG) S.A., 119 F.3d, 935, 947-48. n.6 (11th Cir. 1997)).  The Court does not find that defending litigation in Oklahoma would be so inconvenient for WebRing that it would

preclude the exercise of personal jurisdiction. Indeed, the Court notes that WebRing obtained local counsel to handle the instant Motion. It is not unreasonable to require WebRing to continue to defend itself in the forum state.

### B. Forum's State Interest

The Court also notes that "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." OMI Holdings, Inc., 149 F.3d at 1096 (quoting Burger King, 471 U.S. at 483). WebRing, an out-of-state actor, has the requisite minimum contacts with Oklahoma, and Oklahoma therefore has a great interest in resolving this dispute as it relates to the alleged infringement of a copyright held by its citizen. Moreover, the remaining co-defendants in this case are residents of Oklahoma as well.

### C. Convenience and Efficiency

Plaintiff's interest in receiving convenient and effective relief generally depends on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit. Id. at 1097. Here, federal law applies, so this concern is somewhat diminished. However, all parties to this lawsuit, except WebRing, are residents of Oklahoma. The Court therefore deems Oklahoma to be the most convenient forum, and the most efficient place to litigate the dispute, in accordance with the third and fourth prongs listed above.

### D. Furtherance of Social Policy

The final prong "focuses on whether the exercise of personal jurisdiction by [the forum

state] affects the substantive social policy interests of other states or foreign nations." Id. Here again, because federal law applies, the exercise of jurisdiction by this Court would not seriously interfere with the interests of another sovereign. Moreover, the shared interest of the Internet community, which is arguably more at stake here than any specific state's social policy, transcends jurisdictional boundaries.

Having found that all five of the above factors weigh in Plaintiff's favor, the Court holds that the exercise of personal jurisdiction over WebRing would not "offend traditional notions of fair play and substantial justice" and is therefore proper.

## Conclusion

For the foregoing reasons, the Court finds that its exercise of personal jurisdiction over Defendant WebRing in this litigation is proper. Further, because 28 U.S.C. § 1400(a) permits copyright infringement suits to be instituted in any district where the defendant "resides or may be found," and a defendant "may be found" anywhere he is subject to personal jurisdiction, the Court finds that venue is also proper. Accordingly, Defendant's Motion to Dismiss is DENIED in its entirety.

James H. Payne
United States District Judge
Northern District of Oklahoma